Lyons Transportation Lines, Inc., Petitioner *v.* Workmen's Compensation Appeal Board (Pogany), Respondents.

Lyons Transportation Lines, Inc., Petitioner *v.* Workmen's Compensation Appeal Board (Pogany), Respondents.

Argued March 14, 1984, before Judges ROGERS, COLINS and BARBIERI, sitting as a panel of three.

*Terry L. M. Bashline, Hutton, McCrory, Bashline & Baginski,* for petitioner.

*Thomas P. Geer,* for respondent, Blanche S. Pogany, widow of Joseph P. Pogany.

OPINION BY JUDGE BARBIERI, August 20, 1984:

Lyons Transportation Lines, Inc.[1] (Petitioner) appeals here orders of the Workmen's Compensation Appeal Board (Board) in affirming a referee's grant of benefits on a Claim Petition filed by Joseph P. Pogany, employee, and on a Fatal Claim Petition for the employee's death filed by his widow, Blanche S. Pogany (Claimant) and the action of the Board in failing to grant its rehearing petition.

Joseph P. Pogany injured his back on February 11, 1980 in the course of his employment with Lyons Transportation Lines, Inc., while attempting to move

---

[1] Liberty Mutual Insurance Company, as insurance carrier for Lyons Transportation, Inc., is an interested party and will be deemed to be included in references to Appellee.

a steel drum weighing approximately 600 pounds with a fellow employee. The injury was duly reported to the employer's office manager and claimant was on and off work with his back problem until hospitalized on April 16, 1980.[2] During the hospitalization Pogany was found to have a malignant tumor. The referee found that claimant had suffered a crush fracture of the vertebra as a result of the injury and that this "trauma" aggravated a kidney tumor and precipitated an early death for Joseph Pogany, "the death occurring on July 5, 1980."

Procedurally, Petitioner seeks review alleging error in the awards for Pogany's lifetime disability and for his death and, separately, complains of the failure to honor his rehearing petition. The rehearing petition, although titled "PETITION FOR REHEARING," actually prays that the Board grant a rehearing in this matter to reconsider the decision to affirm the "Referee," and also prays that the Board "grant reargument in this case to analyze the medical evidence involved in light of the standards set forth" in certain other Board cases. As we stated in *Anderson v. Workmen's Compensation Appeal Board (Myers)*, 51 Pa. Commonwealth Ct. 582, 414 A.2d 774 (1980), relied upon by the Board, while the decision to grant or deny a rehearing is within the Board's discretion and will only be reversed for abuse of that discretion, a rehearing should be granted only to allow presentation of "newly discovered, noncumulative evidence or to allow the Board to correct a mistake of law or its

---

[2] Different beginning dates for Claimant's hospitalization are stated in Findings Nos. 3 and 4. Apparently, he went to Suburban General Hospital, in Bellevue, on April 16, 1980 (Finding of Fact No. 3) and to Allegheny General Hospital on either April 23, 1980 or April 24, 1980, these different beginning dates appearing in Findings of Fact, Nos. 3 and 4. The difference is not of any significance in the determination of the appeals herein.

misapprehension of an issue." In our opinion, the Petition for Rehearing here presented no meritorious basis for the granting thereof and, therefore, we will affirm the Board's denial of that petition.

Petitioner's principal contention here, however, is that the referee and Board erred in finding a causal relationship between the injury, and the disability and death of Pogany on the basis of the testimony of Dr. Peter T. Chopping, since the testimony of Dr. Chopping was insufficiently positive and unequivocal to support the necessary findings of causation. We disagree.

First of all, it is our duty on an appeal such as this one to view the medical testimony accepted by the referee in the light most favorable to the claimant in whose favor factual determinations have been resolved. *Cooper-Jarett, Inc. v. Workmen's Compensation Appeal Board (Brown)*, 61 Pa. Commonwealth Ct. 18, 432 A.2d 1128 (1981). Our examination of the record, and particularly the testimony of Dr. Chopping, convinces us that the necessary opinion testimony accepted by the referee is competent and adequate to establish the causal relationship found by the referee. As noted in *Cooper-Jarett,* where the employer appeals, as in this case, from a referee's decision in favor of the claimant, affirmed by the Board, "the claimant is entitled to the benefit of the most favorable inferences deducible from the evidence."

The key findings of the referee are Nos. 5 and 7, as follows:

5. Dr. Chopping testified at a deposition on November 25, 1980, stating that the claimant suffered a crush fracture of the vertebra as a result of the injury. The trauma aggravated a kidney tumor and precipitated an early death for Joseph Pogany.

7. Counsel also stipulated to the admission of the report of Dr. Anthony C. Ripepi, which report was reviewed by this Referee. This Referee accepts the evidence provided by Dr. Chopping for the claimant that the trauma of the injury disabled the claimant from April 16, 1980, until his death and prematurely brought on the early death of the claimant because of the aggravation.

The vital conclusion of law, No. 3, is as follows:

3. The claimants, by their medical evidence, have proven that Joseph P. Pogany suffered a compression fracture of the vertebra which aggravated an existent malignant tumor on his kidney, and causing early cancer to spread throughout his body, disabling him and bringing about a premature death on July 5, 1980.

While it is true, as the Petitioner points out, that claimant's medical witness, Dr. Chopping, uses equivocal language which, standing alone, might require reversal of the awards, we find, as we did in *Martinique v. Workmen's Compensation Appeal Board (Girardi)*, 45 Pa. Commonwealth Ct. 67, 404 A.2d 778 (1979), relied upon by the Board, that if the equivocal statements are read as a part of Dr. Chopping's entire testimony, it was his unequivocal medical opinion that the fractured vertebra was caused by an injury at work and that this aggravated a pre-existing malignancy causing it to spread more rapidly thereby hastening the death of Joseph P. Pogany.

First, in the taking of Dr. Chopping's deposition, his statement in a letter dated May 29, 1980 was admitted without objection. This testimony appears as follows:

MR. GEER: I move to put this in the deposition.

MR. BASHLINE: No objection.

THE WITNESS: [Dr. Chopping] Yes.

Well I did read it through this afternoon and I don't feel that I would want to change anything in there. I am very happy with what I said.

In the statement that was made part of the record, the following appears:

It is impossible to say whether his crushed vertebra is due to a straight forward trauma or whether it was previously weakened by pre-existing cancer. Looking at it either way, I do not think he would have crushed vertebra at the present time if he had not had this accident. I consider that the accident has activated a previously dormant cancer.

In the body of the deposition the following appears:

You would get a crush fracture and I think that what happened there is that there probably was some weakening of the bone which was not causing the patient any trouble whatever before the accident. But when he had this severe jerk, when he dropped his end of the drum, that was sufficient to cause the vertebra to go and to have a crush fracture. There is a combination really of weakening beforehand and then this trauma which caused it to go.

As to the exacerbation of the malignant tumor condition, Dr. Chopping testified:

Well, I think what it could have done, but I cannot say for sure—this is just *my feeling*,[3] is that

---

[3] The opinion expressed as a feeling or "I feel that way about it" is equivalent to say "I believe" and "[c]onsequently, the answer is sufficiently definite." *Swingle v. Mill Creek Coal Co.*, 116 Pa. Superior Ct. 97, 176 A. 828 (1935). *See also Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board*, 77 Pa. Commonwealth Ct. 202, 465 A.2d 132 (1983).

the trauma stirred up the condition and made it go more rapidly. And the way it would have done that would be by disseminating cells into the vertebra, into the blood stream. Now I cannot say for sure, but I think this could easily have been what would have happened. (Emphasis and footnote added.)

Finally, Dr. Chopping testified under cross-examination as follows:

I say the balance of probabilities is that the accident brought forward the date of his death. But I cannot say it brought it forward as much as a year. I don't believe it is that sort of time. *But it brought it forward to some degree.* So that is all I can really say. I can't give you a more firm opinion than that I am afraid. (Emphasis added.)

It is obvious from a reading of Dr. Chopping's testimony that the uncertainty in his opinion, expressed in probabilities, was due to his incapacity to give a firm prediction on the extent of time death was hastened by the injury suffered by Pogany. However, in *Thomas v. Susquehanna Collieries, Inc.,* 148 Pa. Superior Ct. 161, 25 A.2d 98 (1942), the Court stated:

Furthermore, the testimony as to the acceleration of the lung condition as a result of the leg injury is not too general or uncertain, as argued in behalf of the appellant. What we said in Bartlinski v. Northumberland Mining Co., 117 Pa. Superior Ct. 437, 177 A. 518, which was a "death" case, applies equally here: "All that is necessary under the Workmen's Compensation Act, is that the testimony establish that the injury aggravated the condition and accelerated death, *but no opinion or definite prophecy*

*as to how much the death has been hastened or accelerated has yet been required."* (Emphasis in original.)

See also *Hagner v. Alan Wood Steel Co.,* 210 Pa. Superior Ct. 473, 233 A.2d 923 (1967).

Accordingly, we will affirm the decision of the referee, affirmed by the Board and the Board's denial of a rehearing.

## ORDER

Now, August 20, 1984 the orders of the Workmen's Compensation Appeal Board at No. A-82131, dated December 9, 1982, and at Rehearing No. 4059, dated March 31, 1983, are hereby affirmed.

---

DISSENTING OPINION BY JUDGE COLINS:

I must respectfully dissent with the scholarly and well-reasoned opinion of the majority in this matter.

Taken in its entirety, the medical testimony offered by claimant's physician is not, as a matter of law, sufficient to establish causation.

Because Dr. Chopping never expressed a reasonable medical certainty and, in fact, used terms such as "could", "may have" and "balance of probabilities", his opinion of the causation of Mr. Pogany's death was not sufficiently positive. His frequent use of the word "speculation", his linguistic background notwithstanding, does not indicate the degree of medical certainty needed for the referee to find that the injury precipitated an early death. The claimant failed to sustain her burden of proof. Therefore, the referee erred in finding Mr. Pogany's death to have been hastened by his injury based on the physician's testimony, and the Board erred in affirming the referee's decision.