**REINFORCED MOLDING CORPORATION,**
Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (HANEY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 26, 1998.

Decided Sept. 10, 1998.

---

Fred C. Jug, Jr., Pittsburgh, for petitioner.

Daniel J. Sinclair, Pittsburgh, for respondent.

Before DOYLE and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

FLAHERTY, Judge.

Reinforced Molding Corporation (Employer) petitions for review from an order of the Workers' Compensation Appeal Board (Board) which affirmed the order of the Workers' Compensation Judge (WCJ) that granted benefits to David Haney (Haney or Claimant). We affirm.

The WCJ made the following pertinent findings of fact:

a. The claimant, David Haney III, was employed as a machine operator with the employer from July of 1989 until April 16, 1991.

. . . .

c. The claimant, during his employment, was exposed to liquid and vapor styrene as part of his work duties.

d. The claimant was given no skin or breathing protection for his exposure to styrene[.]

e. The chemical styrene is a medically recognized mucous membrane irritant.

f. The claimant's obstructive abnormality in his lungs was aggravated by his exposure to styrene which caused him to become injured on April 16, 1991.

g. The claimant resigned from his position on April 16, 1991 for necessary and compelling medical reasons rather than on a voluntary basis and he is not able to return to work at his time of injury job as a machine operator.

h. The claimant gave due notice of the work related harm he received from styrene to his foreman on or about April 16, 1991.

WCJ's Opinion of 12/21/92 at p. 6. Based on these findings, the WCJ granted benefits. The Board affirmed and Employer petitions for review to this Court.

The Employer presents the following issues for our review:

A. Whether Claimant has sustained his burden of proving disability by unequivocal medical evidence?

B. Whether Claimant has failed to sustain his burden of proof where the testimony of his own expert is speculative?

C. Whether substantial evidence supports the finding Claimant has sustained a wage loss as a result of a work injury?

D. Whether substantial evidence exists that Claimant has satisfied the notice requirement of the [Workers' Compensation] Act?

Employer's brief at p. 3.[1]

Initially, Employer argues that the testimony of Dr. Fino, Haney's medical expert

was equivocal and therefore could not constitute competent evidence to support a finding that Haney's disability was caused by his work exposure to styrene.[2]

 Medical evidence is considered equivocal if it is vague and leaves doubt. *Chadwick v. Workmen's Compensation Appeal Board (Benjamin Franklin Hotel)*, 132 Pa.Cmwlth. 525, 573 A.2d 652 (1990), *appeal denied*, 527 Pa. 604, 589 A.2d 694 (1990). Thus, in conducting an analysis to determine whether medical testimony is unequivocal, the court looks to how certain or positive the medical experts render their expert opinions. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board (Jakel)*, 31 Pa.Cmwlth. 590, 377 A.2d 1007 (1977). Where, as here, an employer is challenging the medical evidence in support of the causal connection between a claimant's disability and his work, the claimant's medical experts must testify in their professional opinions that the disability resulted from the alleged cause, not merely that the disability "may have" resulted from the alleged cause. *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Bd. Of Education)*, 508 Pa. 360, 498 A.2d 800 (1985). However, the medical witness' entire testimony must be taken as a whole, and this court's decision as to equivocality should not rest upon a few words taken out of context. *Anzaldo v. Workmen's Compensation Appeal Board (M & M Restaurant Supply Co.)*, 667 A.2d 488, 492 n. 6 (1995), *appeal denied*, 544 Pa. 676, 678 A.2d 366 (1996). For, "it is not the law, as it has sometimes been argued, that every utterance which escapes the lips of a medical witness on a medical subject, must be certain, positive, and without reservation, exception, or peradventure of a doubt." *Philadelphia College of Osteopathic Medicine. v. Workmen's Compensation Appeal Board (Lucas)*, 77 Pa.Cmwlth. 202, 465 A.2d 132, 124–35 (1983). Rather, we evaluate the medical testimony to determine if as a whole it

---

1. Appellate review over an order of the Board is limited to determining whether an error of law was committed, constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. *Manolovich v. Workmen's Compensation Appeal Board (Kay Jewelers)*, 694 A.2d 405 (Pa.Cmwlth.1997).

2. Employer's argument encompasses both Issues A and B listed above. Thus, our discussion of this argument likewise disposes of both issues.

possesses the requisite certainty. Additionally, it is important to note that an expert need not express his opinion in the precise terms used to articulate a legal standard. *Sears Roebuck and Co. v. Workmen's Compensation Appeal Board (Moore)*, 48 Pa. Cmwlth. 161, 409 A.2d 486 (1979). Finally, the determination as to whether medical testimony is equivocal or not is a question of law subject to an appellate court's plenary review. *Lewis.*

■ Employer argues that Claimant's expert, Dr. Fino, failed to establish that Claimant's disability came about as a result of work exposure to styrene. "On the contrary, Dr. Fino testified that Claimant's underlying lung disorder was caused by years of cigarette smoking." (Employer's brief at p. 10, citing Dr. Fino's testimony in the Reproduced Record (R.R.) at 178.) First, it should be noted that employer is ignoring Dr. Fino's testimony that Haney suffered from both smoking related breathing difficulties **and asthma**. (R.R. at 176.) Furthermore, Dr. Fino testified that "asthma is not a condition related to smoking. It can be either hereditary, occupational, or both." [3] (R.R. at 176.) Second, the WCJ found that the work related injury which Employer is responsible for compensating was not the underlying lung disorder but rather the aggravation of the underlying lung disorder which aggravation was caused by work exposure to styrene. (See F.F. No. 13f.) Thus, it matters not that Dr. Fino's testimony supports that smoking was a contributing factor to Claimant's underlying lung condition. The pertinent inquiry is whether Dr. Fino testified that the styrene exposure caused an aggravation of Claimant's lung condition so as to render him incapable of performing his job. *See Povanda v. Workmen's Compensation Appeal Board (Giant Eagle Markets, Inc.)*, 146 Pa. Cmwlth. 320, 605 A.2d 478 (1992), *appeal denied*, 533 Pa. 603, 617 A.2d 1276 (1992). We find that Dr. Fino did so testify. Dr. Fino testified upon direct examination as follows:

Q. [by Claimant's attorney] Doctor, do you have an opinion within a reasonable degree of medical certainty as to whether Mr. Haney's exposure to styrene at work caused an aggravation or irritation of his underlying lung condition?

A. [by Dr. Fino] I do have such an opinion.

Q. What is your opinion?

A. My opinion is that I believe that his underlying lung condition is his cigarette smoking. And historically, he told me that he had episodes of worsening when he was working in that plant [i.e. Employer's workplace] and he also said that he was exposed to styrene.

Since styrene has been associated on its own, independent of smoking, as a cause for asthma and/or obstructive lung disease, I believe, based on what he tells me and the medical literature, that his episodes of worsening, which I would call exacerbations, are related to the styrene, yes.

Q. Doctor, do you have an opinion within a reasonable degree of medical certainty as to whether, given his underlying condition, Mr. Haney is able to return to employment with requires his exposure to styrene?

**3.** It is on this ground which *Schneider v. Workmen's Compensation Appeal Board (Dobbin)*, 664 A.2d 232 (Pa.Cmwlth.1995) is distinguishable. In *Schneider*, upon which Employer relies, the WCJ found that the "Claimant suffered from emphysema and was disabled from his job due to the emphysema caused by smoking and that the work exposure had no bearing on the development or progression of Claimant's emphysema." *Schneider*, 664 A.2d at 235. In the case at hand however, Haney's lung dysfunction and consequent breathing problems were caused by both smoking and asthma according to Dr. Fino. See R.R. at 175 wherein Dr. Fino testified that

I believe that he [Haney] has chronic obstructive pulmonary disease, and I believe that

chronic obstructive pulmonary disease is a combination of cigarette smoking and asthma.... I found that there have been documented reports in the medical literature of an association between asthma and chronic obstructive pulmonary disease with the inhalation of styrene.

Dr. Fino further testified that "asthma is not a condition related to smoking." (R.R. at 176). The WCJ found Dr. Fino's testimony credible. (F.F. No. 9.) Thus, unlike *Schneider*, the WCJ herein did not find that Claimant's underlying illness was due solely to the non-work-related cause of his smoking. Hence, we do not find *Schneider* controlling herein.

A. I do.

Q. What is your opinion?

A. Based on the answer to my previous question, I would not recommend to him, if I were his treating physician, to return to a styrene environment.

(R.R. at 178 – 179.) Viewing this testimony in light of Dr. Fino's testimony as a whole, we find it to be unequivocal in establishing that the work exposure to styrene caused Haney to develop asthma and an aggravation of Haney's underlying lung condition such that he was not able to return to his preinjury job without further work-related exacerbation of his underlying lung disorder.

Employer points to the fact that in response to a question regarding what would happen to Mr. Haney, if he returned to the styrene work environment, Dr. Fino testified that "I can't be sure of anything in terms of that." Employer asserts that this rendered Dr. Fino's testimony speculative and therefore equivocal. Employer argues that this case is similar to *Cyclops Corp. v. Workmen's Compensation Appeal Board (Paulsen)*, 158 Pa.Cmwlth. 595, 632 A.2d 617 (1993), *appeal denied*, 538 Pa. 617, 645 A.2d 1320 (1994), and *CRL of Maryland, Inc. v. Workmen's Compensation Appeal Board (Hopkins)*, 156 Pa.Cmwlth. 441, 627 A.2d 1238 (1993), *appeal denied*, 537 Pa. 627, 641 A.2d 591 (1994). We disagree. Employer is taking these isolated words quoted out of context, and is failing to read the medical testimony as a whole, contrary to the law. The following is the context within which the quoted phrase appeared. Claimant's attorney asked

Q. And if Mr. Haney were to return to such a styrene environment, what could he expect to experience?

A. Well, that was,—I can't be sure of anything in terms of that. But what one would expect, since I believe there's a sensitivity to the styrene, that he would develop symptoms similar to what he had described in the past, more shortness of breath, more cough, more chest discomfort.

Q. Just to clarify the record here, Doctor, Mr. Haney had an underlying breathing problem before he was exposed to the styrene?

A. Yes.

Q. His exposure to the styrene resulted in aggravation or irritation of that underlying condition?

A. I believe an irritation, certainly an exacerbation, at the time that he was exposed yes.

Q. You would recommend that he not return to that styrene environment?

A. Because of that, yes.

(R.R. at 180–181.) Dr. Fino also testified that Claimant "will always be disabled to go back to an environment where there's styrene as he described it. . . . But this disability, which is a disability, in my opinion, caused by a sensitization to styrene will always be present whether he is working in a styrene environment or not and will prevent him from ever going back to an environment where there is styrene." (R.R. at 198.) We find that the subject phrase when read in context and in light of Dr. Fino's testimony as a whole does not render Dr. Fino's testimony equivocal.

Unlike in *Cyclops Corp*, where the expert therein merely testified that it was "probable" that the claimant's underlying disease would be aggravated, here Dr. Fino testified unequivocally that Haney's styrene sensitization "will prevent him from ever going back to an environment where there is styrene." The import of this testimony when read in the light of the whole of his testimony is that Dr. Fino unequivocally expressed an opinion that Mr. Haney was disabled from returning to his time-of-injury job due to the styrene exposure which Mr. Haney would experience there. *See Farquhar v. Workmen's Compensation Appeal Board (Corning Glass)*, 515 Pa. 315, 329, 528 A.2d 580, 587 (1987)("It would be barbaric to require an employee to continue in a position where he is exposed to a toxic substance until he is so ill that he physically is incapable of performing his job.") *See also Lyons Transportation Lines, Inc. v. Workmen's Compensation Appeal Board (Pogany)*, 84 Pa.Cmwlth. 546, 480 A.2d 358 (1984)(wherein this Court found that although portions of the medical expert's testimony were equivocal, nevertheless, when

taken as a whole, his testimony was unequivocal).

Neither do we find that *CRL of Maryland* requires a reversal herein. In *CRL of Maryland*, in response to a question, the expert therein specifically stated that he did not know whether claimant could have returned to work. The expert therein also never testified that claimant's lack of complete recovery would preclude claimant from returning to his job. Unlike here, it is clear from Dr. Fino's testimony that Mr. Haney's work-related styrene sensitization and asthma which exacerbated his underlying lung condition would forever prevent Mr. Haney from returning to a work environment containing styrene, i.e., from returning to his time-of-injury job. Accordingly, we do not find merit to Employer's contention that Dr. Fino's testimony was equivocal.

■ Next, Employer argues that there is not substantial evidence to show that Haney suffered a loss of wages as a result of his work related injury. Employer argues that Haney must prove not only that he has sustained a compensable injury but also that the injury continues to cause disability throughout the pendency of the claim petition. Employer acknowledges that Haney provided to the WCJ evidence of his earnings after April 16, 1991 from two other jobs which he held for a total of two weeks. Employer does not dispute that these jobs paid less than what Haney was making at his time-of-injury job or that Haney established that he was not otherwise working during the pendency of the claim petition. Thus, Haney established that he suffered a wage loss. Employer, citing *Innovative Spaces v. Workmen's Compensation Appeal Board (DeAngelis)*, 166 Pa.Cmwlth. 141, 646 A.2d 51 (1994), *appeal denied*, 541 Pa. 645, 663 A.2d 696 (1995), however suggests that Haney's burden in order to merit compensation was to prove that there was no work available to him which did not expose him to styrene. (Employer's brief at 15.) However, we do not read *Innovative Spaces* to change the burdens of proof established in *Barrett v. Otis Elevator Co.*, 431 Pa. 446, 246 A.2d 668 (1968), which requires that the claimant establish only that he experienced a work related injury which rendered him incapable of performing his **time of injury job** and that the burden then shifts to the employer to show that other work was available to claimant within his restrictions. Thus, contrary to Employer, it was not incumbent upon Haney to establish that there was not work available to him which did not involve styrene.

*Innovative Spaces* merely requires that a claimant establish the length of his physical disability/injury, not that he also prove that no work was available to him within his restrictions. In *Innovative Spaces*, the claimant's medical expert could only say that claimant was not able to work until June 6, 1988, the last date the medical expert had records for claimant. Thus, this Court held that there was no substantial evidence to support a finding of physical disability beyond June 6, 1988. Unlike *Innovative Spaces*, Dr. Fino testified, in effect, that Haney should never return to his time of injury job which would expose him again to styrene lest he suffer renewed aggravation. Thus, Haney met his burden of proving that he was disabled from performing his time of injury job. This, together with the evidence regarding his post injury employment constituted substantial evidence that Haney was physically disabled from performing his time of injury job and that he sustained a loss of wages as a result thereof. Haney did not have the further burden to prove that no jobs were available to him which did not involve styrene. Accordingly, this issue does not merit Employer relief.

■ Employer next argues that there was not substantial evidence to support a finding that Haney presented Employer with timely or adequate notice of his injury. Specifically, Employer implies that Haney failed to notify Employer that his injury occurred in the course of his employment and that a nexus existed between his physical condition and work activities. Haney however testified that he informed his superiors about his breathing difficulties with the chemicals. (R.R. at 70–71 and 78–79.) Haney also testified that he told his superiors that the chemicals were causing him pain to the point where he could not work. (R.R. at 83.) The WCJ credited this testimony. We conclude that this is substantial evidence to support the WCJ's F.F. No. 13h that Haney provided

"due notice of the work-related harm he received from styrene to his foreman on or about April 16, 1991." Accordingly, this issue does not afford Employer relief.[4]

Having found no error of law as alleged and having found substantial evidence to support the WCJ's challenged findings, we affirm the order of the Board.

### ORDER

NOW, September 10, 1998, the order of the Workers' Compensation Appeal Board, dated January 13, 1998, No. A96–2631, is hereby affirmed.

---

4. Employer filed a Reply Brief to bring to this Court's attention the recent case of *Bethlehem Steel Corp. v. Workmen's Compensation Appeal Board (Baxter)*, 550 Pa. 658, 708 A.2d 801 (1998). Employer asserts that *Baxter* requires a reversal herein because the case is on all fours with the case at hand. We disagree. In *Baxter,* the claimant's own medical expert testified that the same restrictions would be placed upon the claimant whether or not he had ever worked at Bethlehem Steel or had the episodes of exacerbation of his preexisting condition. Essentially, this meant that the medical prohibition from returning to his time-of-injury job was not work-related. The Supreme Court found that this testimony accepted by the WCJ established that any work related injury which the claimant suffered had completely resolved itself and that claimant was fully recovered from any work related injury. Here, unlike in *Baxter* there was no medical testimony whatsoever indicating that the restrictions placed upon Haney would have been placed upon him had he not worked for Employer and developed as a result thereof a styrene sensitization and asthma which when Claimant is exposed to styrene causes an aggravation of his underlying lung condition. Accordingly, we do not find *Bethlehem Steel Corp.* controlling here. Cf. *Bethlehem Steel Corp. v. Workmen's Compensation Appeal Board (Boles)*, 677 A.2d 857 (Pa. Cmwlth.1996), *aff'd,* — Pa. —, 713 A.2d 1116 (1998)(wherein the Supreme Court granted allocatur and affirmed this Court in a per curiam decision). The Supreme Court in the *Boles* per curiam decision observed that because the claimant had shown that the work related aggravation continued to affect his pulmonary function, an award of benefits was appropriate and that this fact distinguished the *Baxter* decision from the *Boles* decision. Thus, *Boles* is still good law and was not overruled by *Baxter.* *See also Schrader Bellows Pneumatics v. Workers' Compensation Appeal Board (Earle)*, 711 A.2d 578 (Pa.Cmwlth.1998)(wherein claimant's recurrent contact dermatitis was caused by work, claimant was entitled to benefits notwithstanding the fact that the symptoms of contact dermatitis resolved themselves as long as claimant did not return to work).